UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CITGO PETROLEUM CORPORATION,

    Plaintiff,

v.                             Case No.: 8:19-cv-245-T-33JSS

MID-STATE ENERGY, INC.,
KENNETH E. ALLEN, JR.,
KOUSAY ASKAR, and
BASSAM ASKAR,

    Defendants.
_____/

**ORDER**

This matter comes before the Court upon consideration of Defendants Kenneth E. Allen, Jr., Bassam Askar, and Kousay Askar's ("the individual Defendants") Motion to Dismiss Count II of Complaint and Motion to Strike, filed on March 12, 2019. (Doc. # 35). Plaintiff CITGO Petroleum Corporation responded in opposition on March 18, 2019. (Doc. # 38). The individual Defendants replied on March 22, 2019. (Doc. # 41). For the reasons that follow, the Motion is granted in part and denied in part.

**I.    Background**

CITGO refines and markets petroleum products, including motor fuels. (Doc. # 1 at 2). It markets its motor fuels "through a network of independent distributors and dealers."

1

(Id.). Until July 2018, Defendant Mid-State Energy, Inc., was one of CITGO's independent distributors and dealers. (Id.). Allen is Mid-State's president, and Kousay and Bassam Askar are both directors of Mid-State. (Id.).

CITGO sued Mid-State in 2012, but they reached a settlement agreement in October 2012. (Id. at 3). Under that settlement agreement, Mid-State was obligated "to purchase from CITGO certain products in amounts sufficient to earn $1 million of credits" by September 30, 2017. (Id.). But Mid-State failed to earn all the credits by the deadline. (Id.).

So, CITGO and Mid-State executed an amendment to the settlement agreement in March 2018, under which Mid-State was obligated "to purchase from CITGO certain products in amounts sufficient to earn $129,622 of credits in 2018" and "to earn $604,000 of credits in 2018-2021." (Id.). Under the amendment, "the failure by Mid-State to make sufficient purchases in 2018 to earn $129,622 of credits in 2018 shall be considered a default, and that a default by Mid-State entitles CITGO to payment of $604,000 less any credits earned by Mid-State in 2018." (Id. at 3-4).

Despite entering the amendment, Mid-State "ceased making purchases from CITGO." (Id. at 4). CITGO alleges Mid-State stopped making purchases because

2

> Allen and the Askars caused Mid-State to (i) transfer assets to one or more of them or to benefit one or more of them, and (ii) sell assets and then to transfer the proceeds from the sale of Mid-State's assets to one or more of them or to benefit one or more of them, without causing Mid-State to receive assets of reasonably equivalent value in exchange.

(Id.). According to CITGO, Allen and the Askars "knew or should have known that the transfers would leave Mid-State unable to satisfy its obligations under the Amendment to CITGO." (Id. at 4-5).

CITGO initiated this action against Mid-State Energy and the individual Defendants on January 30, 2019. (Doc. # 1). In the Complaint, CITGO asserts a breach of contract claim against Mid-State Energy and a fraudulent transfer claim against the individual Defendants. (Id.).

On March 12, 2019, the individual Defendants filed the instant Motion to Dismiss Count II and Motion to Strike. (Doc. # 35). CITGO has responded (Doc. # 38), and the individual Defendants have replied. (Doc. # 41). The Motion is ripe for review.

## II. **Legal Standard**

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the

plaintiff. Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

III. **Analysis**

   A. **Motion to Dismiss Count II**

Count II asserts a claim under Section 726.105(1)(b)(2), Florida Statutes, and alleges that, "[b]y causing Mid-State to make these transfers to one or more of them or to benefit

4

one or more of them, Allen and the Askars caused Mid-State to make transfers that were fraudulent as to CITGO under the Florida Uniform Fraudulent Transfer Act." (Doc. # 1 at 6). CITGO seeks "to avoid these transfers and to recover damages of not less than $529,730.89 . . . from Allen and the Askars to the extent that Mid-State made fraudulent transfers to them." (Id.).

>Section 726.105(1)(b) provides:
>
>A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
>(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>
>2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

Fla. Stat. § 726.105(1)(b). Thus, "[t]o state a claim for constructive fraud, a plaintiff must allege that a debtor made a transfer or incurred an obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (1) was engaged or was about to

5

engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his ability to pay as they became due." Meridian Tr. Co. v. Batista, No. 17-23051, 2018 WL 4760277, at *7 (S.D. Fla. Sept. 30, 2018).

The individual Defendants argue Count II should be dismissed because CITGO "fail[ed] to identify any particular transaction, [and] it fail[ed] to identify to whom the alleged transfer was made and the Complaint is devoid of any allegation that the alleged transfers were made to defraud [CITGO]." (Doc. # 35 at 4).

The Court agrees. CITGO fails to identify any of the transfers it seeks to avoid or the assets that were transferred. See Feldkamp v. Long Bay Partners, LLC, 773 F. Supp. 2d 1273, 1286 (M.D. Fla. 2011)(identifying "plaintiffs' failure to identify the transfers they seek to set aside" as a "pleading deficienc[y]" that warranted dismissal), aff'd, 453 F. App'x 929 (11th Cir. 2012); Meridian Tr. Co., 2018 WL 4760277, at *7 ("[A]lthough the Complaint asserts in conclusory fashion that [Defendants] Erick Magno, Magno PL, and Marcus Berto were recipients of fraudulent transfers, it

6

does not specify which transfers they received that Plaintiffs seek to set aside."); see also Kahama VI, LLC v. HJH, LLC, No. 8:11-cv-2029-T-30TBM, 2013 WL 5177843, at *4 (M.D. Fla. Sept. 12, 2013)(denying motion to dismiss fraudulent transfer claim where plaintiff identified the specific settlement funds defendant received from a quiet title action that were fraudulently transferred to its attorney's trust account).

And, importantly, CITGO fails to identify to which individual Defendant the alleged transfer was made and which individual Defendant benefitted from any transfer. Instead, CITGO conclusorily lumps Allen and the Askars together in its allegation that these Defendants transferred assets out of Mid-State to one or more of them or that one or more of these Defendants benefitted from the transfer of assets. See Lan Li v. Walsh, No. 16-81871-CIV, 2017 WL 3130388, at *7 (S.D. Fla. July 24, 2017)(dismissing fraudulent conveyance claims because "these claims impermissibly lump[ed] together Defendants and fail[ed] to identify any specific transfer of assets, funds or property of Walsh (the alleged debtor) to other Defendants"); Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd., No. 05-60055, 2008 WL 926506, at *3 (S.D. Fla. Mar. 31, 2008)("CGL's objection to

7

the Receiver's 'lumping' of the three Defendants in this manner is valid. Because all three Citco defendants are treated as one, neither the Court nor the Defendants can determine whether CGL is an initial transferee as the Receiver argues."), on reconsideration in part, No. 05-60055-CIV, 2008 WL 7950241 (S.D. Fla. Aug. 5, 2008).

True, CITGO is correct that its fraudulent transfer claim does not have to satisfy Rule 9(b)'s particularity requirement. See United Funding, Inc. v. Boschert, No. 6:09-cv-1839-Orl-28GJK, 2010 WL 11626531, at *2 (M.D. Fla. Mar. 9, 2010)("This Court agrees with other courts that have determined that 9(b) does not apply to actions brought under FUFTA and similar state statutes establishing causes of action for fraudulent transfer."). Nevertheless, the claim still must satisfy Rule 12(b)(6) to survive the pleading stage. And the fraudulent transfer claim, as pled, does not satisfy even the lower Rule 12(b)(6) standard because the Complaint merely includes threadbare allegations that mirror the statutory language. Accordingly, Count II is dismissed with leave to amend by April 8, 2019.

### B. Motion to Strike

Under the Federal Rules of Civil Procedure, a court "may strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "[m]otions to strike on the grounds of insufficiency, immateriality, irrelevancy, and redundancy are not favored, often being considered 'time wasters,' and will usually be denied unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." Italiano v. Jones Chems., Inc., 908 F. Supp. 904, 907 (M.D. Fla. 1995) (citations omitted); see also Augustus v. Bd. of Public Instruction, Escambia Cty., 306 F.2d 862, 868 (5th Cir. 1962)("The motion to strike should be granted only when the pleading to be stricken has no possible relation to the controversy." (citation omitted)).

The individual Defendants seek to strike the allegations relevant to Count II on the basis that Count II is subject to dismissal. (Doc. # 35 at 6-7). However, even though the Court has dismissed Count II with leave to amend, the Court declines to strike the allegations relevant to that count. It is not this Court's practice to strike allegations from a complaint that relate to a cause of action asserted therein — even if that cause of action is subsequently dismissed. And, again, Count II has been dismissed with leave to amend, so CITGO will presumably file an amended complaint with more detailed

9

allegations concerning the supposed constructive fraudulent transfer. The Motion to Strike is denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED**:

Defendants Kenneth E. Allen, Jr., Bassam Askar, and Kousay Askar's Motion to Dismiss Count II of Complaint and Motion to Strike (Doc. # 35) is **GRANTED in part and DENIED in part.** Count II is dismissed with leave to amend and the amended complaint is due by **April 8, 2019.** But the Court declines to strike any allegations from the Complaint.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 25th day of March, 2019.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE